## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES P. BARKER,** | : | **CIVIL ACTION NO. 1:15-CV-1924** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **KATHLEEN G. KANE,** | : | |
| | : | |
| **Defendant** | : | |

### <u>MEMORANDUM</u>

The case at bar arises out of employment action taken by the Attorney
General for the Commonwealth of Pennsylvania, Kathleen Kane ("Kane"),
following a grand jury investigation targeting her conduct in office.  Plaintiff James
Barker ("Barker"), former Chief Deputy Attorney General of Criminal Appeals,
asserts that Kane terminated his employment in retaliation for proffering
unfavorable testimony before the grand jury and thereafter assailed his reputation
on the public stage.  In the complaint, Barker accuses Kane of violating his
constitutionally protected rights to freedom of speech and due process.[1]  Kane
moves the court to stay the instant action pending disposition of related criminal
charges filed against her in the Court of Common Pleas of Montgomery County,
Pennsylvania.[2]  Barker adamantly opposes Kane's request.[3]

---

[1] *See* Doc. 1.
[2] *See* Doc. 21.
[3] *See* Doc. 24.

## I.   Factual Background & Procedural History

Between July 2014 and January 2015, Pennsylvania's Thirty-Fifth Statewide Investigating Grand Jury ("the grand jury") investigated allegations that Kane surreptitiously leaked information from a 2009 grand jury to the press.[4] [5]  The grand jury returned a sealed presentment on December 19, 2014, recommending that the Montgomery County District Attorney pursue myriad criminal charges against Kane, to wit: perjury, false swearing, abuse of office, obstruction of the administration of law, and contempt of court.[6]  The presentment concluded that Kane released protected grand jury material to exact retribution on political opponents and thereafter orchestrated an elaborate cover-up, culminating in perjury *in flagrante*.[7]

The controversy undergirding the investigation arose out of a *Philadelphia Daily News* article published June 6, 2014.[8]  In a front page feature, the story criticized former state prosecutors for terminating a 2009 criminal probe into the use of public funds by Philadelphia's then NAACP leader, J. Whyatt Mondesire

---

[4] For ease of reference, the court will cite directly to exhibits entered on the docket which incorporate all relevant grand jury materials, state court filings, and media coverage.  Exhibit citations will reflect pagination assigned by the Electronic Case Filing system, whereas citations to the parties' briefs will correspond to the documents' original word processing pagination.

[5] Doc. 1-1 at 11, *In re Thirty-Fifth Statewide Investigating Grand Jury*, No. CP-46-MD-926-2015, Presentment No. 60, Dec. 19, 2014 ("Presentment"); Doc. 24-3 at 5, *Commonwealth v. Kane*, No. MJ-38120-CR-381-2015, Criminal Complaint, Oct. 1, 2015 ("Criminal Complaint II").

[6] Presentment at 26-34.

[7] *Id.*

[8] *Id.* at 11, 18 (citing Chris Brennan, *State A.G. is Curious About that Big 2009 Probe of Ex-NAACP Boss's Finances*, PHILA. DAILY NEWS, June 6, 2014).

("Mondesire").[9]  Relying manifestly on internal documents from the Office of the Attorney General, the article catalogued various and sundry evidence presented to a 2009 investigating grand jury concerning Mondesire's financial dealings.[10] Significantly, the article failed to disclose how the *Philadelphia Daily News* gained access to the provocative documents.[11]  The grand jury commenced its review of the disclosure shortly thereafter.

Over the course of the six-month inquest, Kane, Barker, and other current and former senior staff members in the Office of the Attorney General testified before the grand jury.[12]  According to the presentment, Kane asserted the following defenses:

> [T]he [released] information did not qualify for protection because it was not produced during the 2009 Grand Jury; she was not obligated to protect its secrecy because she had not signed an oath of secrecy for an investigation that preceded her administration; and she acted under reasonable belief that the information was not subject to grand jury secrecy because had members of her senior staff believed the information was subject to grand jury secrecy they would have brought to her attention a recommendation that all new persons within her administration, particularly her, should be required to sign oaths of secrecy at that time.[13]

---

[9] *Id.* (citing Brennan, *supra* note 8).

[10] *Id.* at 18 (citing Brennan, *supra* note 8).

[11] *Id.* (citing Brennan, *supra* note 8).

[12] *Id.* at 12-13, 24.

[13] *Id.* at 31.

Kane also represented that she did not order the release of the documents in question, claiming that she was unaware of their existence prior to the publication of the *Philadelphia Daily News* article.[14]

Barker testified that in his role as Chief Deputy Attorney General of Criminal Appeals, he was responsible for supervising all statewide investigating grand juries on behalf of the Office of the Attorney General.[15]  Counterpoising Kane's asseverations, Barker stated that "he immediately concluded that the documents that were leaked to the press were grand jury information subject to secrecy protections, and that no reporter should be in its possession."[16]  Barker further explained that "it is common practice for all senior and support staff of the [Office of the Attorney General], its investigators, agents, and the Attorney General to have an implied ongoing obligation to honor grand jury information as secret, and such obligation does not expire even when a grand jury no longer is in session."[17]  The grand jury ultimately relied on Barker's testimony to a significant degree, underscoring his representations throughout the presentment.[18]  The presentment concluded as follows: "We find that the testimony of Attorney General Kane was not an honest account of the events, and she mischaracterized events to cover-up

---

[14] *Id.* at 24-25.

[15] *Id.* at 21.

[16] *Id.*

[17] *Id.* at 22.

[18] *Id.* at 13, 21-22, 27, 33.

activities undertaken at her direction to unlawfully release documents subject to grand jury secrecy."[19]

On March 13, 2015, the *Philadelphia Inquirer* published an article detailing the grand jury's findings as set forth in the sealed presentment.[20]  The article highlighted the grand jury's reliance on Barker's testimony; specifically, it reported that Barker unequivocally identified the released documents as confidential grand jury information and that Barker "told the grand jurors that the entire office, including the attorney general, was bound by confidentiality regardless of when a jury had met."[21]  The story conspicuously juxtaposed Kane's defensive position with Barker's testimony.[22]

The inceptive event in the matter *sub judice* occurred shortly thereafter; on April 8, 2015, Kane terminated Barker's employment.[23]  According to Barker, Kane tendered no explanation for her decision.[24]  Barker avers that Kane issued the following written statement the next day: "[R]estructuring was necessary for efficiency and tighter controls amid media reports of cases allegedly before a sitting

---

[19] *Id.* at 11.

[20] Doc. 1-3, Craig R. McCoy & Angela Couloumbis, *How Kane Case was Built*, PHILA. INQUIRER, Mar. 13, 2015.

[21] *Id.* at 3.

[22] *See id.*

[23] Doc. 1 ¶¶ 78-81; *see* Doc. 1-4 at 2, *In re Thirty-Fifth Statewide Investigating Grand Jury*, No. CP-46-MD-926-2015, Show Cause Order, Apr. 10, 2015 ("Show Cause Order").

[24] Doc. 1 ¶¶ 82-83.

grand jury.  While not known yet who is specifically responsible for those leaks, supervisory accountability falls to the head of the unit."[25]

On April 10, 2015, the supervising judge of the grand jury ordered Kane to show cause why Barker's termination did not violate a protective order entered in the investigation.[26]  The antecedent protective order, issued August 27, 2014, prohibits employees of the Office of the Attorney General from retaliating against witnesses subpoenaed to testify before the grand jury.[27]  The supervising judge scheduled a hearing thereupon.[28]  In riposte, Kane allegedly cautioned that a hearing "would prove professionally embarrassing" to Barker and "impact his ability to secure future employment."[29]

Subsequent to oral argument held on April 27, 2015, a three-judge panel referred the matter of Barker's termination to the Montgomery County District Attorney for further investigation.[30]  The panel propounded that the incident "may well come within the scope of the District Attorney's ongoing investigation" into the

---

[25] *Id.* ¶ 94.

[26] Show Cause Order at 2; *see* Doc. 1-2 at 2-3, *In re Thirty-Fifth Statewide Investigating Grand Jury*, No. M.D. 1424-2014, Protective Order, Aug. 27, 2014 ("Protective Order").

[27] Protective Order at 2-3.

[28] Show Cause Order at 2.

[29] Doc. 1 ¶ 100.

[30] Doc. 24-1 at 2, *In re Thirty-Fifth Statewide Investigating Grand Jury*, No. CP-46-MD-926-2015, Referral Order, Apr. 27, 2015 ("Referral Order").

criminal charges presented by the grand jury.[31]  By separate order, the supervising judge contemporaneously unsealed the grand jury presentment.[32]

Following an independent investigation of the foregoing events, the Montgomery County District Attorney filed two criminal complaints against Kane on August 6 and October 1, 2015, respectively.[33]  The first criminal complaint charges Kane with perjury, false swearing, obstruction of the administration of law, abuse of office, and conspiracy.[34]  The second criminal complaint asserts additional counts of perjury, false swearing, and obstruction of the administration of law, each appertaining to a secrecy oath recovered from the Office of the Attorney General in September 2015.[35]  In the oath, Kane pledges to preserve the confidentiality of all statewide investigating juries past and present.[36]  Kane's criminal trial is scheduled to commence August 8, 2016 in the Montgomery County Court of Common Pleas.[37]

Barker initiated the instant action on October 5, 2015.[38]  In Count I of the complaint, Barker avers that Kane violated his First Amendment right to freedom of speech by terminating him in retaliation for his testimony before the grand jury.[39]  Barker further alleges in Count II that Kane violated his Fourteenth Amendment

---

[31] *Id.*

[32] Presentment at 5.

[33] Doc. 24-2, *Commonwealth v. Kane*, No. MJ-38120-CR-298-2015, Criminal Complaint, Aug. 6, 2015 ("Criminal Complaint I"); Criminal Complaint II.

[34] Criminal Complaint I at 2-5.

[35] Criminal Complaint II at 3, 16.

[36] *Id.* at 19.

[37] Doc. 25-1, *Commonwealth v. Kane*, Nos. CP-46-CR-6239-2015, CP-46-CR-8423-2015, Scheduling Order, Feb. 1, 2016 ("Scheduling Order").

[38] Doc. 1.

[39] *Id.* ¶¶ 105-13.

due process rights by proffering multifarious defamatory explanations for Barker's termination, thereby damaging his reputation.[40]  On January 11, 2016, Kane moved the court to stay these civil proceedings pending disposition of the criminal charges filed against her in the Montgomery County Court of Common Pleas.[41]  The motion is fully briefed and ripe for review.

## II.   **Standard of Review**

Inherent in the district court's power to control the disposition of civil matters appearing on its docket is the power to stay proceedings when judicial economy or other interests so require.[42]  A stay is an extraordinary measure,[43] and the decision to impose a stay rests within the sound discretion of the district court.[44]  In determining whether to stay a civil case pending resolution of a related criminal proceeding, courts consider the following factors:

> (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest.[45]

---

[40] *Id.* ¶¶ 114-20.

[41] Doc. 21.

[42] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 136 (3d Cir. 2004).

[43] *See Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998).

[44] *See In re Adelphia Commc'ns Secs. Litig.*, No. 02-1781, 2003 WL 22358819, at *2 (E.D. Pa. May 13, 2003) (citing *Landis*, 299 U.S. at 254-56).

[45] *Shrey v. Kontz*, No. 10-CV-1420, 2011 WL 94416, at *1 (M.D. Pa. Jan. 11, 2011) (quoting *In re Adelphia*, 2003 WL 22358819, at *3); *see also Walsh*, 7 F. Supp. 2d at 527.

III.   **Discussion**

Kane submits two principal arguments in support of her motion: first, that the conduct underlying Barker's termination is part of an ongoing criminal investigation by the Montgomery County District Attorney; and second, that substantial overlap exists between the disputed factual issues critical to Barker's claims and the criminal charges pending against Kane.[46]  In opposing the motion, Barker asserts that the criminal investigation into his termination is merely speculative and does not justify an indefinite stay.[47]  Barker further contends that "any similarity between this case and Kane's criminal case is superficial," arguing that "(1) whether Kane retaliated against Barker because of his grand jury testimony and (2) whether Kane wrongly released prior grand jury material and lied about it are separate and distinct issues."[48]  The parties insist *in extenso* that the balance of the aforementioned factors weighs in favor of their respective positions.[49]  The court will consider each factor in turn.

A.   **Degree of Overlap**

The degree of overlap between the pending civil and criminal cases is widely considered "the most important threshold issue" in determining whether or not to impose a stay.[50]  It is undisputed that the supervising judge of the grand jury referred the matter of Barker's termination to the Montgomery County District

---

[46] Doc. 22 at 3-5; Doc. 25 at 1-5.

[47] Doc. 24 at 11-13.

[48] *Id.* at 13-17.

[49] Doc. 22 at 4-9; Doc. 24 at 11-22; Doc. 25 at 1-9.

[50] *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-5530, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002) (citing *Walsh*, 7 F. Supp. 2d at 527).

Attorney for investigation.[51]  The parties vehemently disagree, however, with

respect to the degree of overlap between Barker's complaint and the criminal

charges pending against Kane.[52]

Kane argues that in order for Barker to prevail on his First Amendment

claim, he must "establish Kane's motivation for his termination, which will require

a detailed account of the criminal charges filed against [her]."[53]  Kane additionally

observes that the complaint canvasses "the origin, history, and details of the

charges already filed against [her]."[54]  *Per contra*, Barker posits that "whether Kane

fired [him] because of his testimony" is entirely unrelated to whether "Kane

intentionally released grand jury material, to the detriment of the subject of the

prior grand jury, and testified falsely about doing so before the present grand

jury."[55]  The court is compelled to agree with Kane.

The substantive intersection between Barker's First Amendment claim and

Kane's criminal charges is significant.  As Barker notes, Count I of the complaint

mandates a showing that Barker's grand jury testimony was a substantial or

motivating factor in Kane's decision to terminate his employment.[56]  To accomplish

this task, Barker will endeavor to demonstrate that Kane engaged in the

cloak-and-dagger conduct implicated by his testimony, to wit: the acts charged in

the criminal case.  The verisimilitude of these allegations would tend to establish

---

[51] *See* Doc. 22 at 4-5; Doc. 24 at 12; Referral Order.

[52] *See* Doc. 24 at 13-17; Doc. 25 at 4-5.

[53] Doc. 25 at 5.

[54] *Id.* at 4 (citing Doc. 1 ¶¶ 15-58).

[55] Doc. 24 at 15.

[56] *Id.* at 13; *see* Doc. 1 ¶¶ 105-13.

that Barker's testimony—injurious to Kane if she is indeed culpable—motivated her to retaliate.  For example, Barker testified before the grand jury that the documents leaked to the press constitute secret grand jury material.[57]  Kane learned of the substance and provenance of Barker's testimony at least three weeks prior to Barker's termination.[58]  Assuming *arguendo* that Kane committed perjury by testifying that the released documents do not qualify as protected grand jury material,[59] an inference may be drawn that Barker's contradictory testimony motivated Kane to terminate his employment.  Hence, to satisfy this element of Count I, Barker will introduce evidence germane to Kane's criminal charges.  This material overlap between the civil and criminal proceedings weighs in favor of granting the requested stay.

### B.    Status of Criminal Proceedings

A stay is most appropriate when criminal charges have been filed against the moving party.[60]  Pre-indictment requests to stay parallel civil litigation are routinely denied because the defendant faces a reduced risk of self-incrimination.[61]  Further, the requested postponement is typically contingent upon a criminal investigation of

---

[57] Presentment at 21.

[58] *See* McCoy & Couloumbis, *supra* note 20.

[59] *See* Presentment at 31.

[60] *See Beckham-Easley*, 2002 WL 31111766, at *2; *Walsh*, 7 F. Supp. 2d at 527 (citing Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)).

[61] *See Beckham-Easley*, 2002 WL 31111766, at *2 (citing *Walsh*, 7 F. Supp. 2d at 527).

indefinite duration.[62]  When a party seeking a stay has not yet been indicted, the court may deny the motion "on that ground alone."[63]

The parties concur that Kane *may* be the target of an ongoing criminal investigation directly related to the subject matter of Barker's complaint.[64]  At this time, however, the status of any such inquiry is unknown.  On April 27, 2015, the Montgomery County District Attorney received *carte blanche* to investigate Barker's conspicuously timed termination.[65]  In the interim, no criminal charges have been filed thereupon, and Kane presents no evidence that the District Attorney continues to pursue the matter.  As charges may never be initiated, Kane ostensibly seeks postponement for an undetermined period of time.  The court is reluctant to order a stay on this basis.

The pending criminal charges countenance a different result.  As of August 6 and October 1, 2015, Kane is charged with a robust assemblage of astucious criminal offenses, ranging from perjury to conspiracy.[66]  The contours of the prosecution are well-defined by the operative criminal complaints, allowing the court to gauge with precision the extent to which the parallel criminal and civil actions overlap.[67]  As detailed *infra*, proceeding with discovery will force Kane to either waive her Fifth Amendment privilege or forfeit her defense on key disputed issues in this civil suit.

---

[62] *See id.*
[63] *Id.*
[64] Doc. 22 at 4-5; Doc. 24 at 12; *see* Referral Order.
[65] *See* Referral Order.
[66] *See* Criminal Complaint I; Criminal Complaint II.
[67] *See* Criminal Complaint I; Criminal Complaint II.

Moreover, Kane's trial in the Montgomery County Court of Common Pleas is due to commence in approximately five months.[68]  On the date Barker submitted his opposition papers herein, Kane's criminal trial was not yet scheduled. Consequently, Barker argues that the indefinite nature of the requested stay militates against its approval.[69]  In the interim, prior to Kane's reply, the Montgomery County Court of Common Pleas scheduled Kane's trial for August 8, 2016.[70]  Kane responds to Barker's submission by calling the court's attention to the current trial schedule, narrowing her supplication to a finite period of five months.[71] Indeed, a limited stay of this duration will not cause the litigation to stagnate in any enduring fashion.  Given the advanced stage of the criminal case and the circumscribed timeline of the requested stay, this factor counsels strongly in favor of granting the motion.

C.     **Prejudice to Plaintiff**

Courts must also examine the risk of prejudice to the plaintiff if the requested stay is imposed.[72]  The mere fact of a less expeditious resolution is insufficient to show prejudice.[73]  Plaintiffs may be required to "demonstrate a particularly unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay."[74]

---

[68] *See* Scheduling Order.

[69] Doc. 24 at 17.

[70] Scheduling Order.

[71] Doc. 25 at 5-6.

[72] *See In re Adelphia*, 2003 WL 22358819, at *4; *Walsh*, 7 F. Supp. 2d at 528.

[73] *See Beckham-Easley*, 2002 WL 31111766, at *3.

[74] *In re Adelphia*, 2003 WL 22358819, at *4.

Barker argues that this proceeding should not be stayed because it involves "the violation of constitutional rights by a government official."[75] Yet Barker fails to indicate how this aspect of the instant action is relevant to the question of postponement, citing a single case involving alleged police misconduct in support.[76] Clinging to no more than selective quotation, Barker's argument on this point is unavailing.

Barker additionally contends that a delay will jeopardize his entitlement to reinstatement.[77] Kane responds that Barker's concerns are merely speculative, as reinstatement is an equitable remedy which remains available after a period of delay.[78] She further notes that back pay and front pay are also available in the event that reinstatement becomes impracticable.[79] Finally, Barker asserts that "the timely preservation of . . . testimony" from former employees of the Office of the Attorney General is critical to his case.[80] Kane replies that Barker's supplication does not demonstrate a unique prejudice, especially in light of the truncated stay presently sought.[81]

Barker obviously has an interest in the expeditious resolution of his civil claims. However, he fails to identify any interests so substantial or time-sensitive as

---

[75] Doc. 24 at 18.

[76] *See id.* (citing *Pelzer v. City of Phila.*, No. 07-38, 2007 WL 1377662 (E.D. Pa. May 7, 2007)).

[77] *Id.* at 18-19.

[78] Doc. 25 at 6.

[79] *Id.*

[80] Doc. 24 at 19.

[81] Doc. 25 at 7.

to require immediate resolution.  The risks of less-than-pellucid witness recollection and unavailable remedies are slight given the brevity of the proposed delay.  The court finds that Barker would experience only minimal prejudice from a five-month deferment of the instant litigation.

### D.     Burden on Defendant

Kane contends that if a stay is not granted, she will be forced to choose between asserting or waiving her Fifth Amendment right against self-incrimination.[82]  The risk of self-incrimination is greatest when significant overlap exists between civil and criminal matters and criminal charges have been filed against the defendant.[83]  Kane argues that her circumstances embody this paradigm.[84]  As discussed *supra*, Barker's First Amendment claim overlaps considerably with the criminal charges pending against Kane.  Thus, the court agrees that if discovery herein proceeds in tandem with Kane's criminal prosecution, Kane risks self-incrimination.  This factor also weighs in favor of granting the stay.

### E.     Interests of the Court and the Public

Both the court and the public have a compelling interest in the efficient resolution of cases.[85]  Kane asserts that "[t]he court has an interest in avoiding [the] unnecessary and burdensome privilege issues" which will invariably arise if the

---

[82] Doc. 22 at 7-8.

[83] *See Shrey*, 2011 WL 94416, at *1-2 (citing *Walsh*, 7 F. Supp. 2d at 527).

[84] Doc. 22 at 7-8; Doc. 25 at 7-8.

[85] *See Shrey*, 2011 WL 94416, at *2; *In re Adelphia*, 2003 WL 22358819, at *5-6; *Walsh*, 7 F. Supp. 2d at 528-29.

instant matter proceeds as scheduled.[86]  Barker ripostes that Kane's concerns are
merely speculative.[87]  Barker additionally argues that "the public has a[] . . . strong
interest in deterring abuses of civil rights through civil litigation."[88]  The court has
hitherto determined that Kane's Fifth Amendment concerns are valid.  Moreover,
the court finds that a mere five-month delay will not impair this action's prospective
utility in deterring future civil rights violations.  *In toto*, these factors lend further
support to Kane's request.

IV.   **Conclusion**

The court will grant Kane's motion to stay the above-captioned civil action
pending resolution of the criminal proceedings in the Montgomery County Court of
Common Pleas.  An appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      March 3, 2016

---

[86] Doc. 22 at 8.
[87] Doc. 24 at 21.
[88] *Id.* at 22 (quoting *Anthony v. City of Phila.*, No. 00-5905, 2001 WL 118964, at *2 (E.D. Pa. Feb. 9, 2001)).